EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15CR207 HEA |
| ) | |
| MICHAEL GUIDO, ) | |
| ) | |
| Defendant. ) | |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Michael Guido's Motion to Dismiss for Case Agent's Destruction of Exculpatory Evidence, [Doc. No. 126]. The Government has filed a written response in opposition to the Motion. For the reasons set forth below, the Motion is denied.

Defendant is charged in a one-count indictment alleging conspiracy to knowingly and intentionally distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The indictment charges Jenna Terlosky, Laurie Szucs and Phil Georgiou with the same offense.

On March 2, 2015, Terlosky was stopped by St. Charles County Police Officer Boaz after Officer Boaz observed her commit a traffic violation while driving east-bound on Interstate 70. Pursuant to the traffic stop, Boaz told Terlosky that he suspected that the truck contained illegal narcotics. Boaz advised Terlosky

of her *Miranda* warnings and Terlosky subsequently volunteered to cooperate with the police in their investigation. She told Boaz that she had been paid to drive the truck from California to North Carolina and she thought the truck contained illegal narcotics.

Later on the same day, Terlosky was interviewed by DEA Special Agent John Stuart. Among other information, Terlosky provided Stuart with details of a meeting on Guido's boat, the Irish Rover, on February 23, 2015 in which Terlosky agreed to drive the truck across the country in return for $20,000. Stuart summarized the salient details of his investigation and filed his report on March 9, 2015. He discarded his rough notes from the investigation after completing his report.

Over the next several days, Terlosky continued to collaborate with several DEA Agents in their investigation. Special Agent Eric Kruger, one of the agents assisting with this investigation, had at least one further conversation with Terlosky to clarify details pertaining to the February 23, 2015 meeting on Guido's boat.

On April 15, 2015 Agent Kruger and another agent spoke with Terlosky by telephone to clarify information related to the investigation. Later that same day, Kruger wrote and filed his report of the investigation, in which he noted that

"Laurie SZUCS' name had been inadvertently omitted as a participant in the meeting that occurred on the IRISH ROVER yacht on February 23, 2015."

On September 3, 2015, Defendant filed a request for the Government to supply Stuart's rough notes. The Government attempted to honor this request but was unable to, inasmuch as Stuart had destroyed his notes after completing his report. Stuart advised that this was his normal practice.

Defendant argues that the government violated his due process rights by destroying "exculpatory evidence." Defendant relies on *California v. Trombett* 467 U.S. 479, 489 (1984). Due process is denied if the government destroys evidence where its "exculpatory value…was apparent before the evidence was destroyed" if the evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*. Defendant's reliance on *Trombetta is* misplaced. In order for there to be a violation of Defendant's due process rights, the destroyed evidence must have been exculpatory. Here, Defendant's argument is based on the fatal assumption that Stuart's notes contained exculpatory evidence. There is no evidence before the Court that *Stuart* omitted the information from his notes to the written report. It is entirely possible that *Terlosky* omitted the information until she spoke with Kruger. Defendant's argument regarding a discrepancy between the handwritten notes and the typed report is premised on speculation and conjecture.

Furthermore, Defendant's argument that the notes contained exculpatory evidence is unpersuasive. Whether or not Defendant Szucs was present on the Irish Rover at the meeting contributes very little, if anything.[1] The salient fact is that Defendant Guido *was* at the meeting on the Irish Rover with Defendant Terlosky wherein Terlosky states that Defendant Guido told her he would pay her $20,000 to drive his truck. It is undisputed that Terlosky is always credited as stating that Defendant Guido was present at this meeting.

> [w]e note that neither the Jencks Act, 18 U.S.C. §3500, nor the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), requires police officers to retain their original notes. This court recently held that a trial judge properly refused to strike the testimony of a police officer who had destroyed his original notes after incorporating those notes into a formal report made available to the defendant. In that case, we stated:
> > The Jencks Act has been interpreted to impose no duty upon law enforcement officers to retain their rough, handwritten notes after the contents have been incorporated into more formal reports and the reports are checked for accuracy, especially when the notes have been destroyed in good faith.

*United States v. Kuykendall*, 633 F.2d 118, 119 (8th Cir. 1980). Stuart has stated that he routinely destroys his handwritten notes after preparing his report. Although Defendant attempts to cast the destruction as an act of bad faith, there is no evidence contrary to Stuart's assertion that the destruction was consistent with his usual practice and procedure. Again, Defendant's arguments are purely speculative.

---

[11] Defendant argues that this omission demonstrates Terlosky is "lying" about the meeting. Nothing herein would prohibit Defendant from questioning Terlosky during her testimony for impeachment purposes.

Defendant has presented the Court with no authority requiring the retention of handwritten notes after a formal report has been prepared. While the Court recognizes that it may be prudent to retain such notes, failure to do so does not violate Defendant's due process rights.

> With respect to the disclosure of agent rough notes, the Eighth Circuit has indicated that it is a preferable practice that rough notes be retained, irrespective of whether they might be discoverable by the defendant. *See United States v. Grunewald,* 987 F.2d 531, 535 (8th Cir.1993); *United States v. Leisure,* 844 F.2d 1347, 1361 n. 10 (8th Cir.1988). The government agreed to direct such retention, and has already done so. Defendant has made no showing, however, that such notes are required to be produced. See *United States v. Wright,* 540 F.3d 833, 841–2 (8th Cir.2008) (holding agent interview notes not "statements" required to be produced under Jencks Act); *United States v. Greatwalker,* 356 F.3d 908, 911–12 (8th Cir.2004) (holding agents' handwritten not required to be produced under Jencks Act and noting production under *Brady v. Maryland,* 373 U.S. 83 (1963), required only if notes contain additional exculpatory information).

*United States v. Braidlow*, 2009 WL 690237, at *2 (E.D. Mo. Mar. 11, 2009).

Based upon the foregoing, Defendant's Motion is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Guido's Motion to Dismiss for Case Agent's Destruction of Exculpatory Evidence, [Doc. No. 126], is denied.

Dated this 5th day of November, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE